# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## CINCINNATI DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, individually and on behalf of all others similarly situated, | ) ) ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| THE OHIO STATE UNIVERSITY, and DOES 1-100, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Plaintiff John Doe 1 ("Plaintiff"), on behalf of himself and all other similarly situated individuals who received a medical examination from Dr. Richard Strauss at The Ohio State University, alleges as follows:

## NATURE OF THE ACTION

1.     This is a class action on behalf of individuals who were sexually abused, harassed and molested by serial sexual predator, Richard Strauss (hereinafter, "Strauss") while they were students at Defendant The Ohio State University ("OSU"). These individuals received treatment from Strauss at OSU's medical facilities.

2.     While attending OSU as a wrestler in the 1980s, Plaintiff was forced to repeatedly seek medical treatment from Strauss because he was the wrestling team's doctor. Strauss used this position of trust and authority to sexually abuse Plaintiff on multiple occasions, by engaging in acts that include, but are not limited to: sexual

harassment and inappropriate touching during examinations, including regularly touching Plaintiff's genitals and breast areas, often at the same time, regularly measuring Plaintiff's scrotum, and taking photographs of Plaintiff.

3.      Recently, an investigation into complaints made directly to OSU by student athletes has been opened as OSU. Numerous student athletes have stated they complained of sexual abuse by Strauss dating back to the 1970s, yet OSU did nothing and informed nobody of Strauss' conduct, allowing him to prey on OSU students for decades.

4.      To date, members of the wrestling, cheerleading, fencing, football, gymnastics, ice hockey, swimming, and volleyball teams, as well as a former nursing student, have come forth to detail the abused inflicted upon them by Strauss.

5.      Strauss committed suicide in 2005 at the age of 67.

6.      Plaintiff seeks appropriate relief on behalf of the other individuals who experienced similar mistreatment by Strauss and OSU.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) Plaintiff seeks to represent a nationwide class of the hundreds, or thousands, of individuals sexually abused, harassed, and molested by Strauss, (b) the amount in controversy exceeds $5,000,000, excluding interest and costs, (c) the proposed class consists of more than 100 individuals, and (d) none of the exceptions under the subsection applies to this action.

8.      This Court has personal jurisdiction over Defendants.  They conduct substantial business in this District and intentionally availed themselves of the laws and markets of this District.  A significant portion of the acts and omissions complained of occurred in the District, and Plaintiff and many class members suffered harm in the District.

9.      Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **PARTIES**

10.      This case is being filed anonymously because of the extremely sensitive nature of the conduct involved and damages suffered by Plaintiff and the other Class Members.

11.      Plaintiff John Doe 1 currently resides in South Carolina. Plaintiff was a student and wrestler at OSU from 1982 to 1984 where he received care from Dr. Strauss on at least twenty occasions in connection with Dr. Strauss' role as the wrestling team's doctor.  Plaintiff was subjected to sexual harassment and inappropriate touching during those examinations.

12.      Upon information and belief, OSU and Does 1 through 100 and at all relevant times herein mentioned was and are:

> a.  An Ohio corporation or other entity, form unknown;
> b.  A citizen of Ohio;
> c.  Having its principal place of business in Ohio; and
> d.  Doing business in Ohio.

13.      At all times relevant hereto, Richard Strauss, M.D. was an actual and/or apparent, duly-authorized agent, servant and/or employee of OSU and performed medical services for OSU students-patients as part of his employment.

14.      The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants Does 1 through 100 are unknown to Plaintiff and the Class members who therefore sue these Doe Defendants by such fictitious names. Plaintiff and the Class members will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained during discovery.

15.     Upon information and belief, each of the Defendants named in this Complaint, including each of the Doe Defendants, is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

16.     Upon information and belief, each of the Defendants named in this Complaint, including each of the Doe Defendants, is, and at all relevant times herein mentioned was, the agent, servant, and/or employee of each of the other Defendants, and each Defendant was acting within the course and scope of his, her, or its authority as the agent, servant, and/or employee of each of the other Defendants. Consequently, each Defendant is jointly and severally liable to Plaintiff and the Class members for the damages sustained as a proximate result of their conduct.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Experience

17.     Plaintiff John Doe 1 was a student enrolled at OSU in the 1980s and a member of the wrestling team.

18.     Plaintiff John Doe 1 had approximately twenty appointments with Strauss at OSU's facilities during his time as a student at OSU. During each visit, Plaintiff was subjected to sexual harassment and inappropriate touching during examinations, including regularly touching Plaintiff's genitals and breast areas, often at the same time and regularly measuring Plaintiff's scrotum. During this time period, Dr. Strauss was the only physician made available to the wrestling team.

19.     On one occasion, Plaintiff suffered a rib injury and made an appointment to see Dr. Strauss. Dr. Strauss then instructed Plaintiff to drop his pants so he could examine Plaintiff's scrotum for a hernia.

20.     Strauss' inappropriate physical "treatment" and verbal statements to Plaintiff made him uncomfortable to the point of feeling violated. Plaintiff was young and believed that Strauss' actions were medically necessary.

21.    Plaintiff believed that the coaches at OSU were aware of Dr. Strauss' behavior and conduct but chose to ignore it.

22.    Plaintiff eventually dropped out of OSU, with Dr. Strauss' behavior a significant factor in Plaintiff's decision.

23.    At all times relevant hereto, Strauss was a physician who was licensed to practice medicine in the State of Ohio and was hired by OSU in 1978 as an attending physician. In 1981, Strauss began serving as the team physician for OSU athletics and remained in that position until June 30, 1995. On July 1, 1994, Strauss became a part-time physician with Ohio State's Student Health Services and remained in that position until August 7, 1996.

24.    Strauss established a private medical office in Columbus, Ohio in August of 1996 and retired as a professor emeritus at OSU on July 1, 1998.

25.    Strauss died in 2005, and after an investigation, his death was ruled as a suicide.

26.    At all times relevant hereto, agents, servants, medical staff members, and/or employees of OSU, including Strauss, were acting in the course and scope of their authority, agency, service and/or employment for OSU.

27.    Beginning in approximately the late 1970s, OSU began receiving reports from its students and employees regarding concerns about Strauss' conduct and "treatment" of his patients; nonetheless, OSU failed to take any action in response to such complaints. OSU received numerous complaints of serious misconduct, including sexual misconduct by Strauss made to Strauss' supervisors and other administrators employed by OSU.

28.    One such report was made by former wrestling team captain, Dave Mulvin, in the late 1970s. Mr. Mulvin reported that Strauss had fondled him during an exam to another doctor as OSU's health center, who took no action.

29.    Numerous other students have publicly voiced their experiences with Dr. Strauss: Nick Nutter, an all-American wrestler in the 1990s, stated that whenever he

was injured he was forced to consider "Is this injury bad enough that I'm going to get molested for it?"[1]; Dunyasha Yetts complained to the wrestling coach, Russ Hellickson, after being groped during three exams.

30.    Rather than addressing and properly investigating the complaints, including taking appropriate disciplinary action and/or terminating the employment of Strauss, OSU kept the complaints secret to avoid negative publicity despite their actual knowledge of such misconduct, so that during his time at OSU, Strauss had unfettered access to students at OSU.

31.    OSU failed to take any meaningful action to address the complaints until April of 2018, over ten years after Strauss committed suicide.

32.    Upon information and belief, the complaints made to OSU included, but are not limited to: groping, fondling, showering with athletes in OSU facilities, exceeded the scope of his authority by instructing patients to drop their pants while examining them for a cough or heartburn, and asked students to go home with him.

33.    At all times relevant hereto, Plaintiff and the Class members were students attending OSU who sought care through the OSU student health system and were patients of Strauss during his tenure at OSU. Plaintiff and other members of the Class had no reason to suspect Strauss was anything other than a competent and ethical physician under the employ of OSU.

34.    Knowing that Plaintiff and other members of the Class were trusting and vulnerable – and in many cases still teenagers – Strauss used his position of authority to require Plaintiff and other members of the Class to fully disrobe for no reasonable medical purpose, engage in touching, fondling and groping of Plaintiff and Class members' genitals, engage in nonconsensual sexual touching and fondling of genital region for the purpose of sexual arousal, sexual gratification, and/or sexual abuse.

---

[1] http://www.chicagotribune.com/sports/college/ct-spt-ohio-state-doctor-richard-strauss-20180706-story.html

35.    Strauss carried out these acts without fully explaining the "treatment" or obtaining informed consent of Plaintiff and other members of the Class.

36.    All of Strauss' acts were conducted under the guise of providing medical care at OSU.

37.    The failure to give proper notice or to obtain consent for the purported "treatment" from Class Plaintiffs negated their objection to reject the "treatment."

38.    Strauss used his position of trust and confidence in an abusive manner causing Class Plaintiffs to suffer a variety of injuries including but not limited to shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, loss of enjoyment of life and negative impacts on their ultimate career and professional prospects.

39.    Upon information and belief, despite complaints to OSU representatives, the concerns and allegations went unaddressed in violation of reporting policies and procedures and in a manner that was reckless, deliberately indifferent, and grossly negligent.

40.    Upon information and belief, because OSU took no action to investigate the complaints and took no corrective action regarding Strauss' actions, Plaintiff and other Class members were sexually assaulted, harassed, abused, and molested by Strauss.

41.    In the spring of 1997, allegedly OSU held a hearing against Strauss. An anonymous athlete, confirmed to have been apart of an OSU team during Strauss' time at OSU, told the media he was approached by his coach to testify at a hearing against Strauss but was too embarrassed to do so, but stated that he knew of at least three people who attended the hearing.

42.    It was not until April 5, 2018, that OSU finally publicly acknowledged it had received several allegations of sexual misconduct by Strauss. OSU stated the following about the investigation:

The investigation includes outreach to former student-athletes, coaches, and others who may have been affected or may have had knowledge of these alleged incidents. Dr. Strauss' exact dates of service in his role as a wrestling team physician are not precisely known at this time. The best available information is that he served in this role between the mid-1970s and the late 1990s. Making this determination precisely will be a part of the investigation. Dr. Strauss died in 2005.

43.     On May 3, 2018, OSU provided an update regarding the investigation, including that the Ohio Attorney General's Office appointed Porter Wright Morris & Arthur LLP as legal counsel for the University, who then engaged Perkins Coie LLP to conduct an independent investigation. OSU also stated the following:

Since the April 5 announcement of the allegations and investigation, the university has learned that during his time at Ohio State, Dr. Strauss treated student-athletes from several sports, worked at the medical center, and the student health center. To date, the investigative team has received confidential reports from former Ohio State varsity men student-athletes affiliated with cheerleading, fencing, football, gymnastics, ice hockey, swimming, volleyball, and wrestling. We are sharing this information to encourage our community past and present to come forward.

44.     On June 7, 2018, OSU announced that athletes from fourteen sports had conducted Perkins Coie since it had opened its independent investigation. OSU stated:

Perkins Coie now has received confidential reports of sexual misconduct committed by Strauss from former varsity men student-athletes in 14 sports, up from eight previously identified, and from former patients of Student Health Services within the Office of Student Life. The sports include baseball, cheerleading, cross country, fencing, football, gymnastics, ice hockey, lacrosse, soccer, swimming, tennis, track, volleyball, and wrestling.

45.     In July of 2018, numerous former OSU wrestlers publicly spoke with media outlets and stated that Jim Jordan, assistant coach from 1986 until 1994 (and

later Ohio congressmen and a US. Representative for Ohio's Fourth Congressional District), was also aware of Strauss' abuse but that he also concealed it.

46.     Mike DiSabato, a former OSU wrestler, told NBC News in an article published July 3 that he had contacted Jordan about going public with the abuse allegations: "I considered Jim Jordan a friend, but at the end of the day, he is absolutely lying if he says he doesn't know what was going on."[2] After being informed about DiSabato going public with the allegations, he asked DiSabato to "please leave me out of it."[3]

47.     Dunyasha Yetts, an OSU wrestler in 1993 and 1994, also publicly stated he informed Jordan of the abuse but that nothing was done other than Jordan and coach Russ Hellickson having a talk with Strauss after he allegedly pulled down Yetts' wrestling shorts when he sought treatment for a thumb injury.[4]

## CLASS ACTION ALLEGATIONS

48.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4), Plaintiff brings this action on behalf of herself and the following class of others who are similarly situated:

> Nationwide Class:  All individuals who were examined by Richard H. Strauss, M.D. at The Ohio State University (the "National Class").

49.     Excluded from the class are Defendants, their affiliates and subsidiaries, and their officers, directors, partners, employees, and agents; class counsel, their immediate family members, and employees of their firms; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

---

[2] https://www.nbcnews.com/news/us-news/powerful-gop-rep-jim-jordan-accused-turning-blind-eye-sexual-n888386?cid=sm_npd_nn_tw_ma (last visited July 16, 2018).

[3] *Id.*

[4] *Id.*

50.    Plaintiff reserves the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

51.    The Class consists of hundreds, if not thousands, of students, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by OSU.

52.    <u>Numerosity</u>.  The members of the class are so numerous that their individual joinder is impracticable.  One account estimates that Strauss abused at least 1,500 students at OSU.

53.    <u>Commonality</u>. There are questions of law and fact common to the class, which predominate over any questions affecting individual members of the class.

54.    <u>Typicality.</u> Plaintiff's claims are typical of the other Class members' claims because Plaintiff and Class members were subjected to the same wrongful conduct and damaged in the same manner.

55.    <u>Existence and Predominance of Common Questions of Fact and Law</u>. This action involves common questions of law and fact that predominate over any questions affecting individual class members, including, without limitation:

      a.  Whether Defendants are liable for violations of Title IX of the United States Code, 20 U.S.C. § 1681;

      b.  Whether Defendants are liable for invasion of privacy;

      c.  Whether Defendants are liable for sexual assault;

      d.  Whether Defendants are liable for negligence;

      e.  Whether Defendants are liable for gross negligence and/or wanton and reckless misconduct;

      f.  Whether Defendants are liable for negligent supervision;

      g.  Whether Defendants are liable for negligence *per se;*

      h.  Whether Defendants are liable for negligent hiring/retention;

      i.  Whether Defendants are liable for negligent failure to warn, train or educate; and

      j.  Whether Plaintiff and Class members suffered harm as a result of Defendants' violations and, if so, the appropriate measure of damages, restitution, or rescission.

56.    <u>Adequacy of Representation</u>.  Plaintiff is an adequate class representative. His interests do not conflict with the interests of the other Class members he seeks to represent.  He has retained counsel competent and experienced in complex class action litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately pursue and protect the interests of the class.

57.    <u>Superiority</u>.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by Plaintiff and the other Class members would make it impracticable for class members to seek redress individually. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

58.    <u>Particular Issues</u>.  The claims of class members involve common issues that may be adjudicated on a classwide basis pursuant to Rule 23(c)(4).

## FIRST CLAIM FOR RELIEF
### TITLE IX (20 U.S.C. §1681)
### (Against OSU and Does 1 through 100)

59.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

60.    Plaintiff and the Class members were subjected to sexual harassment, abuse and molestation by Strauss, as students and medical patients at Defendants'

institution.

61. OSU is a public university.

62. OSU, with authority to institute corrective measures, had actual notice that Strauss posed a substantial risk of sexual abuse, harassment and molestation to the young male student-patients who sought treatment through OSU. Specifically, OSU received numerous complaints of Strauss's sexual abuse, yet allowed such sexual abuse to continue unabated.

63. OSU and Does 1 through 100 were deliberately indifferent to the substantial risk of sexual abuse, harassment, and molestation posed to student-patients who came into contact with Strauss at Defendants OSU and Does 1 through 100. After receiving actual notice of Plaintiff and the Class members' complaints of being sexually abused by Strauss, OSU and Does 1 through 100, through their employees, agents, and servants, ignored the sexual abuse that Strauss inflicted on Plaintiff and the Class members and allowed him to continue treating students – many of whom were still teenagers. It was this conduct that constitutes willful indifference towards Plaintiff and the Class members who would be subjected to Strauss's unfettered sexual misconduct.

64. As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

65. In subjecting Plaintiff and the Class members to the wrongful treatment herein described, OSU, Strauss, and Does 1 through 100, acted willfully and maliciously with the intent to harm Plaintiff and the Class members, and in conscious

disregard of Plaintiff and the Class members' rights, so as to constitute malice and oppression. Plaintiff and the Class members are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against OSU and Does 1 through 100, in a sum to be shown according to proof. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF
### INVASION OF PRIVACY
### (Against OSU and Does 1 through 100)

66.     Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

67.     Plaintiff and the Class members alleges that Strauss intruded upon Plaintiff and the Class members' solitude, seclusion or private affairs and concerns by photographing them, and by providing treatment and/or care without authorization or consent. This intrusion is highly offensive to a reasonable individual, such as Plaintiff and the Class members, and was totally unwarranted and unjustified, constituting invasion of privacy.

68.     Strauss carried out such actions and conduct as an employee, agent and/or representative of OSU and were carried out under one of OSU's programs, which provides medical treatment to students, athletes, and the public.

69.     OSU is liable and vicariously liable for Strauss's conduct.

70.     As a direct and proximate result of the conduct of Defendants, Plaintiff and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries, damages (both economic and noneconomic) and permanent disability, in the past, present and future, for which this claim is made. The injuries suffered by the Plaintiff are substantial, continuing and permanent.

71.    Defendants' conduct as described herein was despicable and was committed maliciously, fraudulently and/or oppressively with the wrongful intention of injuring Plaintiff and the Class members and with a willful and conscious disregard of their rights, justifying an award of punitive damages.

## THIRD CLAIM FOR RELIEF
### SEXUAL HARASSMENT
**(Against OSU and Does 1 through 100)**

72.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

73.    During Plaintiff and the Class members' time as students at OSU, Strauss intentionally, recklessly and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on Plaintiff and the Class members' gender that were unwelcome, pervasive and severe, including but not limited to Strauss groping and fondling Plaintiff and the Class members' genitals, all under the supervision of Defendants, who were acting in the course and scope of their agency with Defendants and each of them.

74.    The incidents of abuse outlined herein above took place while Plaintiff and the Class members were under the control of Strauss and OSU and Does 1 through 100, in their capacity and position as supervisors of physicians, medical professionals, and staff at OSU and Does 1 through 100, and while acting specifically on behalf of Defendants.

75.    During Plaintiff and the Class members' time as students at OSU, Strauss intentionally, recklessly and wantonly did acts which resulted in harmful and offensive contact with intimate parts of their persons, including but not limited to, using his position of authority and age to force Plaintiff and the Class members to give into Strauss's sexual suggestions.

76.    Because of Plaintiff and the Class members' relationship with Strauss and OSU and Does 1 through 100, Strauss's status as the only, or primary, athletic

physician employed by Defendant OSU, and Plaintiff and the Class members' generally young age as students at OSU, Plaintiff and the Class members were unable to easily terminate the relationship they had with the Defendant.

77.     Because of Strauss's age and position of authority, physical seclusion of Plaintiff and the Class members, Plaintiff and the Class members' mental and emotional state, and Plaintiff and the Class members general young age, Plaintiff and the Class members were unable to, and did not and could not, give consent to such acts.

78.     Even though the Defendants knew or should have known of these activities by Strauss, Defendants did nothing to investigate, supervise or monitor Strauss to ensure the safety of the student-patients in their charge.

79.     Because of Plaintiff and the Class members' relationship with Defendants, as a student-patients of Defendants, and Plaintiff and the Class members' often young age, Plaintiff and the Class members were unable to easily terminate the doctor-patient relationship they had with Defendants.

80.     A corporation is a "person," which subjects persons to liability for sexual harassment within a business, service or professional relationship, and such an entity defendant may be held liable under this statute for the acts of its employees. Further, principles of ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

81.     Defendants' conduct (and the conduct of their agents) was a breach of their duties to Plaintiff and the Class members.

82.     As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life;

will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## FOURTH CLAIM FOR RELIEF
### NEGLIGENCE
### (Against OSU and DOES 1 through 100)

83.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

84.    From approximately 1978 through 1995, Strauss was an actual and/or apparent, duly-authorized agent, servant and/or employee of OSU and Does 1-100, providing services through OSU as a physician. Defendants knew and/or should have known that Strauss had and was capable of sexually, physically, and mentally abusing and harassing Plaintiff or other victims.

85.    Defendants had special duties to protect the Plaintiff and the Class members, when such individuals were entrusted to Defendants' care. Plaintiff and the Class members' care and health were entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Plaintiff and the Class members. As such, Defendants owed Plaintiff and the Class members as student-patients, a special duty of care that adults and medical professionals dealing with vulnerable medical patients and young students, owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants and Plaintiff and the Class members.

86.    Defendants OSU and Does 1 through 100 breached their duties of care to the Plaintiff and the Class members by allowing Strauss to come into contact with the Plaintiff and the Class members without effective supervision; by failing to adequately hire, supervise and retain Strauss whom they permitted and enabled to have access to Plaintiff and the Class members; by concealing from Plaintiff and the Class members, the public and law enforcement that Strauss was sexually harassing, molesting and

abusing patients; by holding Strauss out to Plaintiff and the Class members as being of high moral and ethical repute, in good standing and trustworthy; and by failing to report Strauss's misconduct to the Ohio Medical Board.

87.     Defendants further breached their duties to Plaintiff and the Class members by failing to investigate or otherwise confirm or deny such facts of sexual abuse by Strauss, failing to reveal such facts to Plaintiff and the Class members, the OSU community and law enforcement agencies, and by placing Strauss into a position of trust and authority, holding him out to Plaintiff and the Class members and the public as being in good standing and trustworthy.

88.     Defendants breached their duty to Plaintiff and the Class members by failing to adequately monitor and supervise Strauss and failing to prevent Strauss from committing wrongful sexual acts with medical patients, including Plaintiff and the Class members. Defendants' voluminous past records of sexual misconduct by Strauss caused Defendants to know, or gave them information where they should have known, of Strauss incapacity to serve as a university physician providing for the physical care of young patient students.

89.     As a direct, proximate and foreseeable result of the above-described conduct, Plaintiff and the Class members have suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity; and may incur expenses for medical and psychological treatment, therapy, and counseling.

## FIFTH CLAIM FOR RELIEF
## GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT
### (Against OSU and Does 1 through 100)

90.     Plaintiff restates and incorporates herein by reference the preceding

paragraphs as if fully set forth herein, and to the extent necessary, plead this claim for relief in the alternative.

91. OSU owed Plaintiff and the Class members a duty to use due care to ensure their safety and freedom from sexual assault, harassment, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Strauss.

92. Strauss owed Class Plaintiff and the Class members a duty of due care in carrying out his duties in a reasonable safe manner as an employee, agent, and/or representative of OSU.

93. By seeking medical treatment from Strauss in the course of his employment, agency, and/or representation of OSU, a special, confidential, and fiduciary relationship between Plaintiff and the Class members and Strauss was created, resulting in Strauss owing Plaintiff and the Class members a duty to use due care.

94. OSU's failure to adequately supervise Strauss – especially once it knew or should have known of complaints regarding his nonconsensual sexual touching, harassment, boundary violations and assaults during examinations – was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and the Class members.

95. Strauss's conduct in sexually assaulting, harassing, abusing, and violating Plaintiff and the Class members in the course of his employment, agency, and/or representation of OSU and under the guise of rendering medical care was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and the Class members.

96. OSU's conduct demonstrated a willful disregard for precautions to ensure Plaintiff and the Class members' safety.

97. OSU's conduct as described above, demonstrated a willful disregard for Plaintiff and the Class members' rights.

98.    OSU breached duties owed to Plaintiff and the Class members and were grossly negligent when it conducted itself by the actions described above, said acts having been committed with reckless disregard for Plaintiff and the Class members' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

99.    As a result of the conduct of the Defendants, Plaintiff and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries, damages (both economic and noneconomic) and permanent disability, in the past, present and future, for which this claim is made. The injuries suffered by Plaintiff and the Class members are substantial, continuing and permanent.

100.    Defendants' conduct as described herein was grossly negligent and/or wanton and reckless because it was despicable and was committed maliciously, fraudulently and/or oppressively with the wrongful intention of injuring Plaintiff and the Class members and with a willful and conscious disregard of Plaintiff and the Class members' rights, justifying an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT SUPERVISION
### (Against OSU and DOES 1 through 100)

101.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

102.    By virtue of Plaintiff and the Class members' special relationship with Defendants OSU and Does 1 through 100, and the relationship between Defendants OSU and Does 1 through 100 with Strauss, Defendants owed Plaintiff and the Class members a duty to provide reasonable supervision of Strauss, to use reasonable care in investigating Strauss background, and to provide adequate warning to Plaintiff and the Class members of Strauss's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of patients, OSU and Does

1 through 100 had a duty to protect, supervise, and monitor both the Plaintiff and the Class members from being preyed upon by sexual predators, and to supervise and monitor Strauss such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiff and the Class members.

103.   OSU and Does 1 through 100 expressly and implicitly represented that their physicians, faculty and staff, including Strauss, were not a sexual threat to those individuals and others who would fall under Strauss's influence, control, direction, and care.

104.   Defendants, by and through their respective agents, servants and employees, knew or should have known of Strauss's dangerous and exploitive propensities and that Strauss was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Strauss in his position of trust and authority as a team physician, physician, faculty member and authority figure over patients and young students, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Strauss, failed to use reasonable care in investigating Strauss, and failed to provide adequate warning to Plaintiff of Strauss's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of patients, including Plaintiff and the Class members, from sexual harassment, molestation, and abuse.

105.   At no time during the periods of time alleged herein did Defendants have in place a reasonable system or procedure to investigate, supervise physicians, faculty members or staff, including Strauss, to prevent sexual harassment, molestation and abuse of those individuals, nor did they implement a system or procedure to oversee or monitor conduct toward patients and others in Defendants' care.

106.   Defendants were aware or should have been aware of how vulnerable medical patients were to sexual harassment, molestation and abuse by physicians, faculty members and other persons of authority within Defendants' entities.

107.   Defendants were put on notice, knew and/or should have known that

Strauss had previously engaged and was continuing to engage in unlawful sexual conduct with student patients and had committed other felonies, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff and the Class members, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through Defendants.

108.   Defendants were placed on actual or constructive notice that Strauss had molested other student-patients during his employment with Defendants. However, Defendants did not reasonably investigate, supervise or monitor Strauss to ensure the safety of the patients.

109.   Defendants' conduct was a breach of their duties to Plaintiff and the Class members.

110.   Defendants breached their duty to Plaintiffs by, *inter alia,* failing to adequately monitor and supervise Strauss and stop Strauss from committing wrongful sexual acts with student-patients, including Plaintiff and the Class members.

111.   As a result of the above-described conduct, Plaintiff and the Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity, and/or may incur expenses for medical and psychological treatment, therapy, and counseling.

**SEVENTH CLAIM FOR RELIEF**

**NEGLIGENT HIRING/RETENTION**

**(Against OSU and DOES 1 through 100)**

112.   Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

113.   By virtue of Plaintiff and the Class members' special relationship with

Defendants, and Defendants' relation to Strauss, Defendants owed Plaintiff and the Class members a duty to not hire or retain, given his dangerous and exploitive propensities, which Defendants knew or should have known about had they engaged in a reasonable, meaningful and adequate investigation of his background prior to his hiring or retaining him in subsequent positions of employment.

114. Defendants expressly and implicitly represented that the team staff, physicians, trainers, faculty members, and team physicians, including Strauss, were not a sexual threat to student-patients and others who would fall under Strauss's influence, control, direction, and guidance.

115. At no time during the periods of time alleged did Defendants have in place a reasonable system or procedure to investigate, supervise and monitor its physicians and healthcare professionals, including Strauss, to prevent pre-sexual grooming or sexual harassment, molestation and abuse of student-patients nor did they implement a system or procedure to oversee or monitor conduct toward student-patients and/or others in Defendants' care.

116. Defendants were aware or should have been aware and understand how vulnerable young students were to sexual harassment, molestation and abuse by faculty members, physicians, and other persons of authority within the control of Defendants prior to Plaintiff and the Class members' sexual abuse by Strauss.

117. Defendants were put on notice, and should have known that Strauss had previously engaged and continued to engage in unlawful sexual conduct with student-patients, and was committing other felonies, for his own personal gratification, and that it was, or should have known it would have been foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff and the Class members, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants.

118. Defendants were placed on actual or constructive notice that Strauss had molested or was molesting patients, both before his employment within Defendants, and during that employment. Defendants had knowledge of inappropriate conduct and

molestations committed by Strauss before and during his employment, yet chose to allow him to remain unsupervised where he sexually abused Plaintiff.

119.   Even though Defendants knew or should have known of these sexually illicit activities by Strauss, Defendants failed to use reasonable care in investigating Strauss and did nothing to reasonably investigate, supervise or monitor Strauss to ensure the safety of the patients.

120.   Defendants' conduct was a breach of their duties to Plaintiff and the Class members.

121.   As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

122.   Defendants owed Plaintiff and the Class members a duty to take reasonable protective measures to protect Plaintiff and the Class members and other student-patients from the risk of sexual harassment, molestation and abuse by Strauss by properly warning, training or educating Plaintiff and the Class members and other about how to avoid such a risk.

123.   Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other patients from the risk of sexual harassment, molestation and abuse by Strauss, such as the failure to properly warn, train or educate Plaintiff and the Class members about how to avoid such a particular risk that Strauss posed—of sexual misconduct.

124. Defendants breached their duty to take reasonable protective measures to protect Plaintiff and the Class members from the risk of sexual harassment, molestation and abuse by Strauss, by failing to supervise and stop employees of Defendants, including Strauss, from committing wrongful sexual acts with student-patients, including Plaintiff and the Class members.

125. As a result of the above-described conduct, Plaintiff and the Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## EIGHTH CLAIM FOR RELIEF
## NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE
### (Against OSU and Does 1 through 100)

126. Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

127. Defendants owed Plaintiff and the Class members a duty to take reasonable protective measures to protect him and other student-patients from the risk of sexual harassment, molestation and abuse by Strauss by properly warning, training or educating Plaintiff and the Class members and other about how to avoid such a risk.

128. Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other patients from the risk of sexual harassment, molestation and abuse by Strauss, such as the failure to properly warn, train or educate Plaintiff and the Class members and other patients about how to avoid such a particular risk that Strauss posed—of sexual misconduct.

129.   Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other patients from the risk of sexual harassment, molestation and abuse by Strauss, by failing to supervise and stop employees of Defendants, including Strauss, from committing wrongful sexual acts with student-patients, including Plaintiff and the Class members.

130.   As a result of the above-described conduct, Plaintiff has suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the class defined above, respectfully requests that the Court:

A.   Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint the undersigned counsel as class counsel;

B.   Award Plaintiff and class members compensatory, restitutionary, rescissory, general, consequential, punitive and/or exemplary damages in an amount to be determined at trial;

C.   Award pre-judgment interest as permitted by law;

D.   Enter appropriate equitable relief;

E.   Award reasonable attorneys' fees and costs, as provided for by law; and

F.   Grant such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 17, 2018                           Respectfully submitted,

                                    By:     */s/Daniel R. Karon*
                                            Daniel R. Karon (#0069304)
                                            **KARON LLC**
                                            700 W. St. Clair Ave., Suite 200
                                            Cleveland, OH 44113
                                            Tel.: 216.622.1851
                                            dkaron@karonllc.com

                                            Joseph G. Sauder
                                            Matthew D. Schelkopf
                                            Joseph B. Kenney
                                            **SAUDER SCHELKOPF LLC**
                                            555 Lancaster Avenue
                                            Berwyn, PA 19312
                                            Tel.: 888.711.9975
                                            jgs@sstriallawyers.com
                                            mds@sstriallawyers.com
                                            jbk@sstriallawyers.com

                                            *Counsel for Plaintiff and the Putative
                                            Class*